UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RONALD MORGAN, as attorney-in-fact for )
HELGA NEUSS,                            )   COMPLAINT
                                        )
              Plaintiff                 )   IN ADMIRALTY AND AT LAW
                                        )
vs.                                     )   (JURY DEMAND)
                                        )
SEABOURN CRUISE LINE LIMITED,           )   NO.
                                        )
              Defendant                 )
_____ )

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Ronald Morgan, as attorney-in-fact for Helga Neuss, by and through the undersigned

counsel, hereby sues Defendant, Seabourn Cruise Line Limited, and alleges:

I.      GENERAL ALLEGATIONS

THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Admiral Ronald Morgan USNR (Ret), as attorney-in-fact for Helga Neuss, is

a citizen and resident of the State of Arizona.

2.      Ronald Morgan is Helga Neuss's (hereinafter "Mrs. Neuss") beloved partner.  He has

authority to act for Mrs. Neuss in the event that she is incapacitated through a durable power of

attorney.  Through the execution of the power of attorney he is authorized to bring litigation on Mrs.

Neuss's behalf.

COMPLAINT - 1

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

3.    Mrs. Neuss is a citizen and resident of the State of California.

4.    As a direct and proximate result of the conduct forming the basis of the litigation, Mrs. Neuss was rendered incapacitated and suffered severe and devastating neurological, cognitive, and physical injuries.  Ronald Morgan brings this action on her behalf as her duly appointed attorney-in-fact.

5.    Defendant, Seabourn Cruise Line Limited (hereinafter "Seabourn"), is a Foreign Corporation, existing under the laws of Bermuda, with its principal place of business in Seattle, Washington, and the owner, operator, or owner *pro hac vice* of the cruise vessel Seabourn *Quest* on which the subject incident occurred.

6.    At all times relevant and material hereto, Seabourn acted through its agents, employees, and/or representatives, who in turn acted within the scope of their employment and/or agency.

7.    The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 because the amount in controversy exceeds the sum or value of seventy five thousand dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity between the parties hereto. The Court also has jurisdiction over this matter because the causes of action asserted herein arise under 28 U.S.C. § 1333 and the General Maritime Laws of the United States.

8.    The Court has personal jurisdiction over Seabourn on its continuous and systematic business contacts with the state of Washington.

9.    Venue is proper in this Court under 28 U.S.C. § 1391 (b) and (c) as Seabourn is subject to personal jurisdiction in this Judicial District and therefore are deemed to reside here.  The cruise line ticket at issue also requires that suit be brought in this Court.

10.   All conditions precedent for filing and maintaining this action have been satisfied,

COMPLAINT - 2

BUDGE◊HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

waived, or do not apply.

## II.    FACTUAL BACKGROUND

11.    Ronald Morgan and Mrs. Neuss entered into a contract of carriage with Defendant for the purpose of a cruise around the British Isles aboard the Seabourn *Quest*.  The cruise embarked on July 1, 2019.

12.    Seabourn, as a common carrier, is engaged in the business of providing vacation cruises to the public aboard vessels including the Seabourn *Quest*. At all times material hereto, Defendant owned, operated, managed, maintained, and/or controlled the Seabourn *Quest*.

13.    Seabourn, through online, television, radio and print advertisements specifically markets its cruises as luxury vacations, providing the "best of the best services," with extensive offerings and activities for people of all ages and abilities.

14.    As part of providing  vacation  cruises,  Seabourn  is obligated to provide competent medical care and facilities, as well as personnel capable of making sound medical and medical evacuation decisions.

15.    As part of providing  vacation  cruises,  Seabourn  advertised  that  its  vessels  have onboard medical centers staffed by a doctor and a nurse with facilities equipped to provide care for unexpected illnesses.

16.    Seabourn charged  money  to  passengers  for  medical  services  provided.   As such, Seabourn is in the business of providing medical services to passengers for profit and owes a non-delegable duty to provide competent and non-negligent medical care and services.

17.    Seabourn owned, operated, controlled, and/or maintained the medical center aboard the Seabourn *Quest*.   Seabourn maintained a Fleet Medical Operations division at corporate headquarters in Seattle.  The onboard medical center and Fleet Medical Operations division work as a

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

team in the event of medical evacuation emergency.  A structured emergency response team onboard each of Seabourn's vessels run monthly practice drills.  Seabourn is aware that medical emergencies may arise on its vessels and is aware of the essential need to promptly evacuate passengers suffering from serious medical emergencies.  As documented in MS Seabourn *Quest* preparation report – November 2018 for Route of the Viking II cruise, "Staff are experienced in arranging helicopter or fixed wing air ambulance transfers for critical patients."

18.     Seabourn, through its shore-side Fleet Medical Operations division, had the ability to control and monitor each and every step taken by its medical staff onboard via telephone, video conference, Skype, or otherwise.

19.     Seabourn's officials and employees had the ability to monitor and participate in safety, security, and medical emergencies onboard the vessel by communicating with the ship's crew via telephone, videoconference, Skype and other means of communication. Seabourn, through both the crew onboard and their shore-side officials and employees, who acted in consultation with one another, failed to properly care and promptly and properly evacuate Mrs. Neuss.

20.     Upon information and belief, the Master of Seabourn *Quest* was consulted regarding Mrs. Neuss's condition and the emergent nature of the situation.  The Master is an employee or agent of Seabourn and had the ability to divert or control the vessel or make the appropriate decision to afford one of his passengers the medical care and treatment she desperately needed.

21.     At all times Seabourn was vicariously liable for the negligence of the medical staff and doctors onboard the Seabourn *Quest*, who were employees, apparent agents, actual agents, or joint venturers of Seabourn.

22.     At all times Seabourn was vicariously liable for the negligence of the non-medical personnel onboard the Seabourn *Quest*, who were employees, apparent agents, actual agents, or joint

COMPLAINT - 4

venturers of Seabourn.

23.    At all times Seabourn had control or the right to control all persons working in its medical departments, including the Doctor, Nurse, and personnel that improperly treated and negligently mismanaged Mrs. Neuss's condition.

24.    Mrs. Neuss and Ronald Morgan relied upon Seabourn's representations regarding its available shipboard medical facility with its qualified and competent medical team in their decision to purchase the cruise.

25.    On July 8, 2019, Mrs. Neuss was on board the Seabourn *Quest* as paying passenger for a cruise of the British Isles.

26.    On the evening of July 8, 2019, at approximately 10:30 p.m., Mrs. Neuss lost consciousness and collapsed while exiting the ship's evening entertainment at the Seabourn Lounge. At approximately 10:40 p.m., Mrs. Neuss was taken to the *Quest's* Medical Center.  She was noted to have an inability to mobilize, stand upright, loss of speech, and an altered level of consciousness.

27.    Upon arriving at the *Quest's* medical center, Mrs. Neuss was diagnosed as having suffered a "Cerebrovascular accident/ stroke" by the Seabourn *Quest's* Senior Physician, Dr. Rainer Guenzel, an acknowledged and unqualified medical emergency.

28.    In light of the symptoms and manifestations exhibited by Mrs. Neuss, any reasonably prudent healthcare provider in Dr. Guenzel's position would have known that a medical air-evacuation to a comprehensive stroke center was medically necessary.

29.    An air-evacuation was both medically necessary and operationally feasible.

30.    At all times material, Dr. Guenzel was an employee or agent of Seabourn, as its ship physician and was at all time material acting within the course and scope of his employment or agency with Seabourn.

COMPLAINT - 5

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

31.     At the time that Mrs. Neuss presented to the ship's medical center the *Quest* was traveling in protected Scottish inland waters having departed from Tobermory, Scotland at 5:00 p.m. The vessel was less than 100 miles by air from the major metropolitan center of Glasgow, and within quick reach of several primary and comprehensive stroke centers. The Inverclyde Royal Hospital in Greenock was less than 70 air miles from the ship. Mrs. Neuss was eventually admitted to the stroke ward of this hospital.

32.     Dr. Guenzel assessed Mrs. Neuss and initially noted that she scored a 33 on the NIHSS scale.  This constitutes a severe stroke.  Despite recognizing that Mrs. Neuss was in the throes of a severe stroke, Dr. Guenzel failed to act in a manner consistent with the recognized standard of care.

33.     At around 12:30 a.m., after diagnosing a stroke, Dr. Guenzel had a telemedicine consultation regarding Mrs. Neuss with a doctor resident in Florida from Larkin Hospital.  A medical note regarding the telemedicine consult stated as follows: "Ship will reach port (Scotland) within 5 hours, at that time patient should be transferred to nearest medical facility for further management."

34.     Any prudent physician in Dr. Guenzel's position knows that time is of the ultimate essence in treating a stroke patient.  With each passing minute and hour the chances of an improved outcome and the window of probability to effectively administer certain proven interventional procedures and medications dwindle.  Dr. Guenzel's failure to act guaranteed that Mrs. Neuss would fall outside the acceptable time window to treat a stroke patient.

35.     The medical center of the *Quest* is not equipped with medical imagining capabilities to properly diagnose or monitor the condition of a stroke patient's brain.

36.     Instead of taking prompt action to evacuate Mrs. Neuss the *Quest* simply maintained its course, heading, and speed as if there was not a critically-ill patient onboard in dire need of

BUDGE◈HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

medical attention.  Dr. Guenzel failed to adequately communicate with the Captain or Seabourn shoreside personnel to make alternative arrangements to get Mrs. Neuss to a capable treatment facility promptly.  A helicopter or other available vessel should have been summoned immediately to evacuate her.  Barring that, the vessel could have increased speed, diverted course to a closer port, returned to a previous port, or rendezvoused with a cutter, fast boat, or other available vessel to transport Mrs. Neuss expeditiously.  Nothing was done for her despite an array of readily available options.

37.    On the morning of July 9, 2019, at approximately 7:30 a.m., more than nine (9) hours after her stroke symptoms first manifested, the *Quest* anchored off Rothesay, Scotland, in keeping with its pre-planned itinerary.  At that point a tender transported Mrs. Neuss to an ambulance waiting for her on the Isle of Bute.  Unbeknownst to Admiral Morgan or Mrs. Neuss, the Isle of Bute is not equipped with a medical center capable of rendering treatment to a stroke patient.  Seaborn utterly failed to adequately communicate, confer, investigate, or coordinate with the medical center at the Isle of Bute.  It failed to ascertain if it was a center capable of treating stroke to ensure continuity of care before sending Mrs. Neuss there.  Had Seabourn exercised a minimum modicum of diligence it would have learned that the Isle of Bute was not a capable treatment center.  Seabourn simply dumped Mrs. Neuss at the geographically closest location requiring the least effort on its part.  Zero logistical planning, communication, or foresight factored into the decision to transport Mrs. Neuss to the Isle of Bute.  Seabourn put its own convenience and desire to meet its pre-arranged schedule and itinerary above that of its patient's wellbeing.

38.    Adding insult to the injury caused by Seabourn's callous disregard for human life, when Mrs. Neuss was admitted to the medical center at Isle of Bute the staff there inquired as to why she was not taken to Wemyss Bay on the mainland instead.  Wemyss Bay would have been a five to

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

ten minute longer tender ride to arrive at a geographic location where Mrs. Neuss could have been transported immediately to a stroke treatment center instead of offloaded to a remote waiting facility for 5 hours without treatment capacity for her stroke.

39.      Because Mrs. Neuss was taken by Seabourn to the remote Isle of Bute, an ambulance had to be summoned from the mainland and take a ferry to reach her.  She was loaded onto the ambulance, loaded onto the ferry, and finally driven to Greenock, Scotland, where she was admitted to Inverclyde Royal Hospital Emergency Department at approximately 2:06 p.m., more than fifteen (15) hours after her symptoms first manifested.  The ER physician at Inverclyde Royal Hospital categorized Mrs. Neuss as having an imminently life-threatening condition.

40.      Due to the decision of Seabourn and Seabourn's agents not to order an emergency air evacuation, rendezvous with another vessel, divert or speed the vessel's return to port, or otherwise ensure that Mrs. Neuss was promptly transported to a medical facility capable of treating her, there was an unreasonably excessive delay in obtaining the necessary medical care that she urgently needed.

41.      Because of Seabourn's unreasonable delay and failure to timely air evacuate her off the ship, her condition worsened to the point where the damage to her brain was irreversible.  She was cruelly robbed of the opportunity to have a far better outcome had she been promptly and properly treated.  She will be disabled and suffer for the rest of her life as a result.

42.      As a direct and proximate result of Seabourn's negligence, Mrs. Neuss has been left with permanent devastating physical, cognitive and neurological deficits.  An excessive amount of her brain tissue died and will never function again due to the unreasonable delay in receiving competent treatment.  She now requires intensive medical care and homecare treatment around the clock. She suffered and continues to suffer from partial paralysis and loss of mobility.  Her muscles

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

have atrophied and wasted away due to her limitations.  She has lost basic mental abilities such as memory, concentration, perception and understanding.  She frequently cannot adequately swallow. Her ability to remember words and speak has been greatly impaired.  Her reading is greatly impaired. She has trouble reading something as simple as a Dr Seuss book. Each day is a challenge to read the same words. Her memory is not there. She often forgets and cannot recall her own last name. Her right hand does not operate normally and she has lost some feeling in it. She has difficulty with simple tasks such as remembering things needed in day to day life. Her brain cannot easily make sense of what her eyes see and she is often confused.  She has permanently lost vision field of view on the right side. She frequently has blurry and double vision. Her creative abilities and ability for imagination have been decimated.  She avoids social contact since she cannot process topics and conversations.  She will never be the same and will require care and treatment for the remainder of her life.  She has sustained damages that include, but are not limited to, pain and suffering, physical injuries, disability, significant disfigurement  embarrassment, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical treatment and care treatment expenses, loss of the ability to earn money in the future, and a shortened life span. Her recovery has been a grueling and tragic course. Because of Seabourn's negligence she must endure this painful existence until she perishes.

43.     Seabourn's conduct described above through its Doctor, Crew, and employees constitutes intent to cause such damage to Mrs. Neuss, or recklessness with knowledge that such damage would probably result.  Seabourn knew that Mrs. Neuss was suffering a severe stroke at the time she initially presented to the medical center.  Seabourn knew of the extreme risks and high probability that catastrophic injuries would occur if stroke treatment was not rendered in a timely fashion.  Despite knowing of such risks and that such damage would probably result, Seabourn

BUDGE⊛HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE: (206) 624-3060

1   intentionally acted as to deprive Mrs. Neuss of any meaningful treatment within the accepted and

2   known time-frame for proper stroke treatment. Seabourn knew that a catastrophic result was

3   inevitable without treatment.  Its intentional and reckless conduct guaranteed that Mrs. Neuss would

4   be deprived of a positive outcome, and preordained that she would spend the rest of her life riddled

5   with disabilities and suffering.

6

7                               III.      COUNT I – NEGLIGENCE

8           Plaintiff re-alleges and incorporates by reference paragraphs 1 – 43 of this Complaint.

9           44.     In light of Seabourn's experience and familiarity with the demographics of the

10  passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises,

11  the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past

12  cruise passengers, it was reasonably foreseeable to Seabourn  that the Seabourn *Quest* would have

13  passengers similar in age to Plaintiff, and passengers with common illnesses and emergencies such as

14  Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require

15  proper examination, evaluation, treatment, and evacuation.

16          45.     Seabourn owed Plaintiff the duty of exercising reasonable care under the

17  circumstances.  In particular, as Plaintiff suffered a stroke onboard the Seabourn *Quest* and was taken

18  to the ship's medical center, Seabourn owed Plaintiff the duty of protecting her from injury relating to

19  her emergent condition, and of exercising reasonable care to furnish such aid and assistance as

20  ordinarily prudent persons would render under similar circumstances.

21          46.     Seabourn breached its duty of protecting Plaintiff from injury relating to her emergent

22  condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent

23  persons would render under similar circumstances. Seabourn breached its duty in one or more of the

24  following ways:

BUDGE☉HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

a.      Seabourn failed to properly assess the condition of Mrs. Neuss;

b.      Seabourn failed to timely diagnose Mrs. Neuss;

c.      Seabourn failed to properly treat Mrs. Neuss;

d.      Seabourn failed to perform or arrange for appropriate diagnostics testing given Mrs. Neuss's condition;

e.      Seabourn failed to obtain consultations with appropriate specialists;

f.      Seabourn failed to properly monitor Mrs. Neuss;

g.      Seabourn failed to air-evacuate Mrs. Neuss from the ship so that she could promptly receive treatment;

h.      Seabourn failed to timely divert the ship or return to port or shore so that Mrs. Neuss could promptly receive treatment;

i.      Seabourn failed to timely evacuate Mrs. Neuss by speed boat or another vessel;

j.      Seabourn failed to timely or adequately contact the Coast Guard regarding the need for an air evacuation;

k.      Seabourn failed to properly consult qualified shore-based personnel regarding Mrs. Neuss's condition;

l.      Seabourn failed to obtain a proper medical opinion regarding Mrs. Neuss's condition;

m.      Seabourn failed to develop and institute adequate procedures and policies to address Mrs. Neuss's medical situation;

n.      Seabourn failed to determine if the Isle of Bute Medical Center was capable of treating Mrs. Neuss;

o.      Seabourn failed to determine or inquire if the Isle of Bute Medical Center was equipped with functioning CT Scan machine to properly diagnose Mrs. Neuss;

p.      Seabourn failed to determine or inquire if The Isle of Bute Medical Center had proper medical specialists, such as neurosurgeons, capable of treating Mrs. Neuss;

BUDGE◊HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

q.      Seabourn failed by sending Mrs. Neuss to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

r.      Seabourn failed to ascertain, inquire, or ensure that Mrs. Neuss could be transferred from the Isle of Bute Medical Center expeditiously should she be unable to be treated at The Isle of Bute Medical Center;

s.      Seabourn failed to appreciate the severity of Mrs. Neuss's worsening condition;

t.      Seabourn failed to perform any procedure to Mrs. Neuss's medical benefit;

u.      Seabourn failed to properly advise Mrs. Neuss's family of her urgent condition;

v.      Seabourn failed to properly advise Mrs. Neuss's family of her transfer options;

w.      Seabourn failed to properly advise Mrs. Neuss's family of her medical disembarkation options;

x.      Seabourn failed to receive informed consent to transfer Mrs. Neuss to the Isle of Bute Medical Center rather than a comprehensive stroke center;

y.      Seabourn failed to properly ascertain sufficient information to determine where Mrs. Neuss should be transferred;

z.      Seabourn deviated from the standard of care for treating patients in Plaintiff's condition.

47.     Seabourn knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Seabourn.  Seabourn was aware that passengers may suffer from life threatening conditions such as stroke, and was aware of the urgent need to air evacuate such patients to competent medical centers capable of providing treatment.

48.     As a direct and proximate result of Seabourn breaching its duty to Mrs. Neuss, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Neuss had received

BUDGE◆HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE:  (206) 624-3060

the appropriate care and treatment by being timely evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

49.     Seabourn is liable for punitive damages because it breached its duty to Mrs. Neuss by conducting itself in a wanton, willful and/or outrageous manner.   Seabourn's conduct constitutes intent to cause such damage to Mrs. Neuss, or recklessness with knowledge that such damage would probably result. Mrs. Neuss's devastating, irreversible injury could have been prevented by timely and appropriate action.  Instead, she was delayed by Seabourn in obtaining the prompt medical care and treatment that she desperately needed.

WHEREFORE,  Plaintiff,  respectfully  requests  that  this  Court  enter  judgment  against Seabourn for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

IV.     COUNT II – NEGLIGENCE OF NON-MEDICAL PERSONNEL

**(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)**

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 43 of this Complaint.

50.     In light of Seabourn's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to Seabourn that the Seabourn *Quest* would have passengers similar in age to Plaintiff, and passengers with common illnesses and emergencies such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

51.     Seabourn,  through  its  non-medical  personnel,  including  its  officers,  directors, employees, agents, servants and/or persons otherwise authorized to act on behalf of Seabourn, both

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

on board the Seabourn *Quest* and located at Seabourn ' shore-side offices, owed Plaintiff the duty of exercising reasonable care under the circumstances. In particular, as Plaintiff suffered a stroke onboard the Seabourn *Quest* and was taken to the ship's medical center, Seabourn owed Plaintiff the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

52.     Seabourn, through the negligence of its non-medical personnel, breached its duty to Plaintiff to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Seabourn  breached its duty in one or more of the following ways:

a.      Seabourn failed to timely and properly communicate the condition of Mrs. Neuss to its shore side personnel;

b.      Seabourn failed to follow proper policies and procedures to ascertain the operational feasibility of a medical evacuation for Mrs. Neuss;

c.      Seabourn failed to air-evacuate Mrs. Neuss  from the ship so that she could promptly receive treatment;

d.      Seabourn failed to timely divert the ship so that Mrs. Neuss could promptly receive treatment;

e.      Seabourn failed to evacuate Mrs. Neuss by speed boat, tender boat, or transfer;

f.      Seabourn failed to contact the Coast Guard regarding the need for an air evacuation;

g.      Seabourn failed to ascertain whether the medical facility in the Isle of Bute was a proper choice for the disembarkation of its passenger;

h.      Seabourn failed to choose a medical center capable of adequately treating its passenger prior to disembarkation;

BUDGE⊛HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

i.    Seabourn failed to arrange for any follow up transportation from the Isle of Bute for its passenger;

j.    Seabourn failed to communicate between shoreside and the vessel to ensure proper, timely, and continuous care for Mrs. Neuss.

53.    Seabourn, through its non-medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Seabourn.

54.    As a direct and proximate result of Seabourn breaching its duty to Mrs. Neuss, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Neuss had received the appropriate care and treatment by being timely evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

55.    Seabourn is liable for punitive damages because it breached its duty to Mrs. Neuss by conducting itself in a wanton, willful and/or outrageous manner.  Seabourn's conduct constitutes intent to cause such damage to Mrs. Neuss, or recklessness with knowledge that such damage would probably result. Mrs. Neuss's devastating, irreversible injury could have been prevented by timely and appropriate action.  Instead, she was delayed by Seabourn in obtaining the prompt medical care and treatment that she desperately needed.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against Seabourn for compensatory damages, punitive damages, interest, court costs, and  all other relief recoverable under law or as this Court deems just and proper.

V.    COUNT III – NEGLIGENCE OF MEDICAL PERSONNEL

**(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)**

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 51 of this Complaint.

BUDGE☆HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

56.     Seabourn's medical personnel, including the doctors and nurses on board the Seabourn *Quest*, were the employees, agents, servants and/or persons otherwise authorized to act on behalf of Seabourn. Thus, Seabourn is vicariously liable for the acts and/or omissions of its medical personnel.

57.     Seabourn acknowledged that its medical personnel, including the doctors and nurses onboard the Seabourn *Quest*, would act for it, and the medical personnel manifested an acceptance of the undertaking. For example: (1) Seabourn  directly paid the medical personnel for their work in the medical center onboard the Seabourn *Quest*; (2) the medical center on board the Seabourn *Quest* was created, owned and operated by Seabourn ; (3) the medical personnel on board the Seabourn *Quest* worked at what Seabourn  describes in its advertising as Seabourn's medical center; and (4) Seabourn knowingly provided, and the medical personnel on board the Seabourn *Quest* knowingly wore, uniforms bearing Seabourn's name and logo; the ship physician on the Seabourn *Quest* is considered and titled an officer of Seabourn cruise line.

58.     Seabourn's' medical personnel, including the doctors and nurses on board the Seabourn *Quest*, were subject to the right of control by Seabourn, and were acting within the scope of their employment or agency. For example: (1) the medical personnel were employed by Seabourn; (2) the medical personnel were hired to work in a medical center on board the Seabourn *Quest* that was created, owned and operated by Seabourn; (3) the medical personnel were paid salaries and/or other employment related benefits directly by Seabourn; (4) the medical personnel on board the Seabourn *Quest* were considered to be members of the ship's crew; (5) the medical personnel were required to wear uniforms or other insignia furnished by Seabourn; (6) Seabourn  put the medical personnel on board the Seabourn *Quest* under the command of the ship's superior officers, and they were subject to the ship's discipline and the master's orders; (7) Seabourn  had the right to fire its medical personnel; (8) Seabourn   directly billed the Plaintiff and other passengers onboard the

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

Seabourn *Quest* for services rendered by its medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; and (9) the medical personnel on board the Seabourn *Quest* were subject to the control of Seabourn's shore-side medical department located in Seattle, Washington at Fleet Medical Operations.

59.     Seabourn, through its medical personnel, owed Mrs. Neuss the duty of exercising reasonable care under the circumstances. In particular, as Mrs. Neuss suffered a stroke on board the Seabourn *Quest* and was taken to the ship's medical center, Seabourn owed Mrs. Neuss the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

60.     Seabourn, through its medical personnel, breached its duty of protecting Mrs. Neuss from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Seabourn, through its medical personnel, breached its duty in one or more of the following ways:

    a.    Seabourn failed to properly assess the condition of Mrs. Neuss;

    b.    Seabourn failed to timely diagnose Mrs. Neuss;

    c.    Seabourn failed to properly treat Mrs. Neuss;

    d.    Seabourn failed to perform or arrange for appropriate diagnostics testing given Mrs. Neuss's condition;

    e.    Seabourn failed to obtain consultations with appropriate specialists;

    f.    Seabourn failed to properly monitor Mrs. Neuss;

    g.    Seabourn failed to air-evacuate Mrs. Neuss from the ship so that she could promptly receive treatment;

    h.    Seabourn failed to timely divert the ship or return to port or shore so that Mrs. Neuss could promptly receive treatment;

COMPLAINT - 17

i.      Seabourn failed to timely evacuate Mrs. Neuss by speed boat or another vessel;

j.      Seabourn failed to timely or adequately contact the Coast Guard regarding the need for an air evacuation;

k.      Seabourn failed to properly consult qualified shore-based personnel regarding Mrs. Neuss's condition;

l.      Seabourn failed to obtain a proper medical opinion regarding Mrs. Neuss's condition;

m.      Seabourn failed to develop and institute adequate procedures and policies to address Mrs. Neuss's medical situation;

n.      Seabourn failed to determine if the Isle of Bute Medical Center was capable of treating Mrs. Neuss;

o.      Seabourn failed to determine or inquire if the Isle of Bute Medical Center was equipped with functioning CT Scan machine to properly diagnose Mrs. Neuss;

p.      Seabourn failed to determine or inquire if The Isle of Bute Medical Center had proper medical specialists, such as neurosurgeons, capable of treating Mrs. Neuss;

q.      Seabourn failed by sending Mrs. Neuss to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

r.      Seabourn failed to ascertain, inquire, or ensure that Mrs. Neuss could be transferred from the Isle of Bute Medical Center expeditiously should she be unable to be treated at The Isle of Bute Medical Center;

s.      Seabourn failed to appreciate the severity of Mrs. Neuss's worsening condition;

t.      Seabourn failed to perform any procedure to Mrs. Neuss's medical benefit;

u.      Seabourn failed to properly advise Mrs. Neuss's family of her urgent condition;

v.      Seabourn failed to properly advise Mrs. Neuss's family of her transfer options;

BUDGE✠HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

w.  Seabourn failed to properly advise Mrs. Neuss's family of her medical disembarkation options;

x.  Seabourn failed to receive informed consent to transfer Mrs. Neuss to the Isle of Bute Medical Center rather than a comprehensive stroke center;

y.  Seabourn failed to properly ascertain sufficient information to determine where Mrs. Neuss should be transferred;

z.  Seabourn deviated from the standard of care for treating patients in Plaintiff's condition.

61.  Seabourn, through its medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Seabourn.

62.  As a direct and proximate result of Seabourn breaching its duty to Mrs. Neuss, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Neuss had received the appropriate care and treatment by being timely air evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

63.  Seabourn is liable for punitive damages because it breached its duty to Mrs. Neuss by conducting themselves in a wanton, willful and/or outrageous manner.  Seabourn's conduct constitutes intent to cause such damage to Mrs. Neuss, or recklessness with knowledge that such damage would probably result. Mrs. Neuss's devastating, irreversible injury could have been prevented by timely and appropriate action.  Instead, she was delayed by Seabourn in obtaining the prompt medical care and treatment that she desperately needed.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the Seabourn  for compensatory damages, punitive damages, interest, court costs, and  all other relief recoverable under law or as this Court deems just and proper.

BUDGE✦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

## COUNT IV – NEGLIGENCE OF MEDICAL PERSONNEL

### (**Vicarious Liability Based Upon Apparent Agency**)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 51 of this Complaint.

64.    Seabourn's medical personnel, including the doctors and nurses on board the Seabourn *Quest*, were the apparent employees, agents, servants and/or persons otherwise authorized to act on behalf of Seabourn. Thus, Seabourn is vicariously liable for the acts and/or omissions of its medical personnel.

65.    Seabourn made representations to the Plaintiff and other passengers onboard the Seabourn *Quest* that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for Seabourn's benefit. For example: (1) Seabourn  promoted the medical personnel on board the Seabourn *Quest* and represented them as being Seabourn employees through brochures, internet advertising and/or signs, documents, and uniforms on the ship; (2) Seabourn promoted the medical center on board the Seabourn *Quest* and described it in proprietary language; (3) the medical personnel on board the Seabourn *Quest* worked in the medical center that Seabourn  promoted and described in proprietary language; (4) Seabourn directly billed the Plaintiff and other passengers onboard the Seabourn *Quest* for services rendered by the onboard medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; (5) the medical personnel on board the Seabourn *Quest* were required to wear uniforms or other insignia furnished by Seabourn; (6) Seabourn  held out the medical personnel on board the Seabourn *Quest* as members of the ship's crew; and (7) the medical personnel on board the Seabourn *Quest* spoke and acted as though they were employed by Seabourn. Seabourn had knowledge of such representations but never took any action to indicate otherwise.

66.    Seabourn's representations to the Plaintiff and other passengers onboard the Seabourn

BUDGE☉HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

*Quest* caused them to reasonably believe that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for Seabourn's benefit. Indeed, Seabourn actually intended that the Plaintiff and other passengers onboard the Seabourn *Quest* have such perception or belief because it is a marketing tool to induce passengers such as the Plaintiff to purchase cruises on Seabourn ships in the first place, to feel secure while on board Seabourn ships and/or to be a repeat customer.

67.     Seabourn's representations to the Plaintiff and other passengers onboard the Seabourn *Quest* induced their detrimental, justifiable reliance upon the appearance of agency. For example, Mrs. Neuss justifiably relied upon Seabourn's representations in deciding to purchase a cruise on the Seabourn *Quest*.

68.     Seabourn, through its medical personnel, owed Mrs. Neuss the duty of exercising reasonable care under the circumstances. In particular, as Ms. Neuss suffered a stroke onboard the Seabourn *Quest* and was taken to the ship's medical center, Seabourn owed Mrs. Neuss the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

69.     Seabourn, through its medical personnel, breached its duty of protecting Plaintiff from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Seabourn, through its medical personnel, breached its duty in one or more of the following ways:

a.     Seabourn failed to properly assess the condition of Mrs. Neuss;

b.     Seabourn failed to timely diagnose Mrs. Neuss;

c.     Seabourn failed to properly treat Mrs. Neuss;

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

d.      Seabourn failed to perform or arrange for appropriate diagnostics testing given Mrs. Neuss's condition;

e.      Seabourn failed to obtain consultations with appropriate specialists;

f.      Seabourn failed to properly monitor Mrs. Neuss;

g.      Seabourn failed to air-evacuate Mrs. Neuss from the ship so that she could promptly receive treatment;

h.      Seabourn failed to timely divert the ship or return to port or shore so that Mrs. Neuss could promptly receive treatment;

i.      Seabourn failed to timely evacuate Mrs. Neuss by speed boat or another vessel;

j.      Seabourn failed to timely or adequately contact the Coast Guard regarding the need for an air evacuation;

k.      Seabourn failed to properly consult qualified shore-based personnel regarding Mrs. Neuss's condition;

l.      Seabourn failed to obtain a proper medical opinion regarding Mrs. Neuss's condition;

m.      Seabourn failed to develop and institute adequate procedures and policies to address Mrs. Neuss's medical situation;

n.      Seabourn failed to determine if the Isle of Bute Medical Center was capable of treating Mrs. Neuss;

o.      Seabourn failed to determine or inquire if the Isle of Bute Medical Center was equipped with functioning CT Scan machine to properly diagnose Mrs. Neuss;

p.      Seabourn failed to determine or inquire if The Isle of Bute Medical Center had proper medical specialists, such as neurosurgeons, capable of treating Mrs. Neuss;

q.      Seabourn failed by sending Mrs. Neuss to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

r.      Seabourn failed to ascertain, inquire, or ensure that Mrs. Neuss could be transferred from the Isle of Bute Medical Center expeditiously

BUDGE✦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

should she be unable to be treated at The Isle of Bute Medical Center;

s.     Seabourn failed to appreciate the severity of Mrs. Neuss's worsening condition;

t.     Seabourn failed to perform any procedure to Mrs. Neuss's medical benefit;

u.     Seabourn failed to properly advise Mrs. Neuss's family of her urgent condition;

v.     Seabourn failed to properly advise Mrs. Neuss's family of her transfer options;

w.     Seabourn failed to properly advise Mrs. Neuss's family of her medical disembarkation options;

x.     Seabourn failed to receive informed consent to transfer Mrs. Neuss to the Isle of Bute Medical Center rather than a comprehensive stroke center;

y.     Seabourn failed to properly ascertain sufficient information to determine where Mrs. Neuss should be transferred;

z.     Seabourn deviated from the standard of care for treating patients in Plaintiff's condition.

70.     Seabourn through its medical personnel knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Seabourn.

71.     As a direct and proximate result of Seabourn's breaching its duty to Mrs. Neuss, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Neuss had received the appropriate care and treatment by being timely air evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

72.     Seabourn is liable for punitive damages because it breached its duty to Mrs. Neuss by conducting themselves in a wanton, willful and/or outrageous manner. Seabourn's conduct constitutes intent to cause such damage to Mrs. Neuss, or recklessness with knowledge that such

BUDGE⊕HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

damage would probably result. Mrs. Neuss's devastating, irreversible injury could have been prevented by timely and appropriate action. Instead, she was delayed by Seabourn in obtaining the prompt medical care and treatment that she desperately needed.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against Seabourn for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

<u>COUNT V – NEGLIGENCE / HIRING AND RETENTION</u>

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 43 of this Complaint.

73.     In light of Seabourn's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to Seabourn that the Seabourn *Quest* would have passengers similar in age to the Plaintiff, and passengers with common illnesses and emergencies such as the Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

74.     Seabourn owed Plaintiff the duty of exercising reasonable care to employ competent and fit medical personnel, including competent and fit doctors and nurses on board the Seabourn Quest. However, Seabourn's medical personnel, including the doctors and nurses on board the Seabourn Quest, were incompetent or unfit to perform the requisite examination, evaluation and treatment for passengers like the Mrs. Neuss, and Seabourn knew or reasonably should have known that they were incompetent or unfit to do so.

75.     Seabourn breached its duty by hiring incompetent and unfit medical personnel. For example, Seabourn failed to conduct an appropriate background investigation to determine if they

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

were qualified by training and/or experience, and if they were capable of conducting an appropriate examination and/or evaluation for purposes of treatment or referral for appropriate treatment to a shore side facility. An appropriate investigation by Seabourn would have revealed the incompetence or unfitness of its medical personnel to examine, evaluate, treat or refer to an appropriate shore side facility or physician to treat conditions such as those Mrs. Neuss suffered from.

76.     Seabourn breached its duty by hiring and then retaining incompetent and unfit medical personnel. For example, Seabourn became aware or should have become aware of problems with its medical personnel indicating incompetence and unfitness, but Seabourn failed to take appropriate action such as investigating the problems with its medical personnel, discharging its medical personnel or otherwise remedying the problems by providing appropriate training and other resources. It was unreasonable for Seabourn to hire and retain its medical personnel in light of the information it knew or should have known.

77.     As a direct and proximate result of the incompetence or unfitness of Seabourn's medical personnel, Mrs. Neuss suffered severe and permanent. If the medical personnel had been competent and fit, Mrs. Neuss would have received appropriate care and treatment or been timely evacuated from the ship so that she would not have suffered such devastating, irreversible injuries to her brain and body.

78.     Seabourn is liable for punitive damages because it breached its duty to Mrs. Neuss by conducting themselves in a wanton, willful and/or outrageous manner.  Seabourn's conduct constitutes intent to cause such damage to Mrs. Neuss, or recklessness with knowledge that such damage would probably result. Mrs. Neuss's devastating, irreversible injury could have been prevented by timely and appropriate action.  Instead, she was delayed by Seabourn in obtaining the prompt medical care and treatment that she desperately needed.

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

1         WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the

2 Seabourn for compensatory damages, punitive damages, interest, court costs, and all other relief

3 recoverable under law or as this Court deems just and proper.

4

5 DEMAND FOR JURY TRIAL

6        Plaintiff demands a trial by jury on all claims set forth herein.

7        RESPECTFULLY SUBMITTED this 22nd day of May, 2020.

8

9

10                         By: */s/ Edwin S. Budge*
                          Edwin S. Budge (WSBA # 24182)

11                           ed@budgeandheipt.com
                          **BUDGE and HEIPT, PLLC**

12                           808 E. Roy St.
                          Seattle, WA 98102

13                           Telephone: 206.624.3060

14

15

16                           **LEESFIELD SCOLARO, P.A.**

17                           Thomas Scolaro (FBN 178276)

18                           scolaro@leesfield.com
                          (*Pro Hac Vice* Admission Request Pending)

19                           Thomas D. Graham (FBN 89043)

20                           graham@leesfield.com
                          (*Pro Hac Vice* Admission Request Pending)

21                           2350 South Dixie Highway
                          Miami, Florida 33133

22                           Telephone: (305) 854-4900

23                           Facsimile: (305) 854-8266

24                           Attorneys for Plaintiffs

25

26

27

28

BUDGE❦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060